IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOHNNIE EDWARDS,** ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | Case No.: 2:13-cv-1945-KOB |
| ] | |
| **VIRGINIA COLLEGE, LLC,** ] | |
| ] | |
| Defendant. ] | |

### MEMORANDUM OPINION

This matter comes before the court on defendant Virginia College, LLC's "Motion for Complete Summary Judgment." (Doc. 30). Plaintiff Johnnie Edwards sued Virginia College under 29 U.S.C. §§ 621, the Age Discrimination in Employment Act, alleging that Virginia College failed to promote her to Associate Director of Admissions (ADOA) because of her age.

Edwards worked for Virginia College for several years as an Admissions Associate. In May 2012, at the age of 41, Edwards applied for the ADOA position. Kenneth Macon, Virginia College's 47-year-old Director of Admissions for the Online Division, chose James Sanders, another Virginia College employee who was not yet 40 years old.  The Defendant contends Macon chose Sanders for the position because of Sanders's superior experience and leadership skills. Edwards claims Virginia College failed to promote her because of her age.

As discussed before, Edwards fails to show that age was the "but for" cause of Virginia College's decision not to promote her. In fact, Edwards hardly provides any age-related evidence at all. Therefore, for the following reasons, the court will grant Virginia College's motion for summary judgment.

1

I.     Facts

A.     The Admissions Department

Virginia College is a private higher education institution with an online campus, with operations in Birmingham, Alabama. Virginia College employs Admissions Associates in its Admissions Department. Admissions Associates report to Associate Directors of Admissions. The Birmingham office of Virginia College has four ADOAs. ADOAs perform all the duties of Admissions Associates, help manage the Admissions Department, and supervise a team of 10-12 Admissions Associates each.

Each ADOA's team has a "Team Lead" Admissions Associate. Team Leads perform all the duties of Admissions Associates and help train and supervise other Admissions Associates. Virginia College uses the Team Lead position to identify future managers. Virginia College also provides a Future Leaders Training Program. The Future Leaders Training Program provides training to employees on leadership, management, and communication, among other topics. Virginia College uses the Future Leaders Training Program to identify future managers.

Employees in the Admissions Department talk openly about their age and celebrate birthdays. For example, Christine Elscherman-Johnson, Virginia College's Vice-President of Admissions, once "sarcastically" said, in referring to Edwards and other Virginia College employees, "[t]hey have the old people sitting over here." (Doc. 34-1 at 19).

B.     Edwards's Work History

Edwards received her GED in 1996, a Bachelor's Degree in Business from Faulkner University in 2005, and a Juris Doctorate from Birmingham School of Law in 2011. Edwards previously worked as an admissions recruiter at ITT Technical Institute from 2007 to 2009. On

December 14, 2009, Virginia College hired Edwards as an Admissions Associate.

During 2010, Edwards worked on ADOA Scotty Smith's team. While working under Smith, Edwards attended the Future Leaders Training Program until October 2010. In October 2010, Edwards informed Smith that she was not interested in the team lead position. On October 18, 2010, Smith instructed Edwards to "no longer attend the Future Leaders Training." (Doc. 34-1 at 3-4). The Future Leaders Training Program continued to meet through 2011, but Edwards did not attend because she did not receive any information about the program, Smith instructed her not to attend, and she did not receive an invitation to attend.

In July 2011, Virginia College reassigned Edwards to ADOA Larry Sailes's team as Team Lead. In October 2011, Virginia College reassigned Edwards to ADOA Kenneth Macon's team as Team Lead.[1] In November 2011, Edwards voluntarily stepped down as Macon's Team Lead. James Sanders, another Admissions Associate on Macon's team, replaced Edwards as Team Lead. Edwards served as a Team Lead for a total of four months on Sailes's and Macon's teams.

### C.   May 2012 ADOA Position

In May 2012, Edwards applied for an open ADOA position. Edwards was 41 years old when she applied. Forty six other people applied for the position including James Sanders, who received the position. The record does not contain Sanders's exact age, but he was not yet 40 years old in May 2012. Sanders began as an Admissions Associate in March 2008, served as a

---

[1] In Edwards's deposition and briefing, she states that she also worked as the "acting Associate Director of Admissions" or "acting Director of Admissions" around this time. Edwards "used that term [acting Associate Director of Admissions or Director of Admissions] interchangeably" with Team Lead. (Doc. 32-1 at 35).

Team Lead from May 2010 through May 2012, and completed the Future Leaders Training Program. Sanders does not have a four year degree, however.

The parties dispute the job requirements for the ADOA position. An October 18, 2011 version of the job description required "Education: Bachelor's degree in related Administrative, Business, Liberal Arts, or Social Sciences discipline. Experience: 3 to 5 years experience directly related to the duties and responsibilities specified," as well as a number of soft skills. (Doc. 34-1 at 6). In contrast, a June 7, 2012 version of the job description required a "Bachelor's degree in a related Administrative, Business, Liberal Arts, or Social Sciences discipline with 3 to 5 years experience directly related to the duties and responsibilities specified. *Prior work experience can offset the degree requirement*." (Doc. 32-2 at 72 (emphasis added)). Neither version listed Team Lead experience or completion of the Future Leaders Training Program as requirements.

Macon, who Virginia College promoted to Director of Admissions for the Online Division in March 2012, reviewed some of the 46 applications, interviewed, and selected the new ADOA. Macon was around 47 years old at the time. No other Virginia College employee participated in the selection of the new ADOA. For internal candidates, Macon considered whether the applicant had served as a Team Lead and whether the applicant had completed the Future Leaders Training Program. Macon did not review Edwards's application.

Macon interviewed Sanders and Jennifer Coleman, another Admissions Associate, for the position. Edwards was not interviewed. Macon "believed that Sanders was the most qualified applicant," "had the experience and leadership qualities necessary for the position," and "would be the best fit working with and overseeing the Admissions Associates." (Doc. 32-3 at 4).

Macon selected Sanders for the position and informed the Admissions Department,

4

including Edwards, of his choice on June 4, 2012. Macon based his choice on his experience managing Sanders and a review of Sanders's resume. Macon also had directly observed Sanders, as well as Edwards, on a daily basis. Finally, Macon knew that Sanders "served in a leadership role for approximately eight months . . . and had approximately two years of experience as a Team Lead Associate." (Doc. 32-2 at 4).

### D.     Litigation

Edwards argues that Virginia College did not promote her to ADOA because of her age, because Macon could not "intimidate" or "manipulate" her, because she "was a mature woman," because she "was educated," and because she "wasn't going to be led by a string." (Doc. 32-1 at 51-52). Edwards filed the operative, second amended complaint, on June 2, 2014. (Doc. 23). On February 20, 2015, after completion of discovery, Virginia College moved for summary judgment. (Doc. 30).

## II.     Standard of Review

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact *or* by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *Id.* at 255.

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274,1282 (11th Cir. 1999). The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## III. Analysis

Edwards sued Virginia College under the ADEA alleging that Virginia College failed to promote her to ADOA because she was over 40 years old when she was denied the promotion.

The ADEA makes it unlawful for an employer to fail to promote an individual because of age. 29 U.S.C. § 623(a)(1). The employee may establish a claim of illegal age discrimination through either direct or circumstantial evidence. *See Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008). A plaintiff relying on circumstantial evidence must prove discrimination under the ADEA using the *McDonnell Douglas* burden-shifting framework. *See Chapman v. Al Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under the *McDonnell Douglas* framework, the plaintiff must first show a *prima facie* case of discrimination and the burden then shifts to the defendant to show a legitimate, non-discriminatory reason for its action. *See Chapman*, 229 F.3d 1024. The plaintiff must then show that the defendant's proffered reason is pretext. *Id.* In the ADEA context, the employee must also

show "that age was the but-for cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (internal quotation marks omitted).

### A. *Prima Facie* Case

"In the failure-to-promote context, the prima facie case consists of showing these elements: (1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted." *Bryant v. Dougherty Cnty. Sch. Sys.*, 382 Fed. App'x 914, 917 (11th Cir. 2010) (citing *Brown v. Alabama Dept. of Transp.*, 597 F.3e 1160, 1174 (11th Cir. 2010)). Virginia College alleges that Edwards cannot establish the second and fourth element of her *prima facie* case.

#### 1. Edwards's Qualifications

Virginia College argues that Edwards did not have the qualifications for the ADOA position because (1) she never completed the Future Leaders Training Program; (2) she did not want to be a Team Lead and quit as Team Lead after four months; and (3) she was unsuccessful as a Team Lead. However, the published requirements for the position do not require completion of the Future Leaders Training Program or a "successful" stint as a Team Lead.

To establish the second element of a *prima facie* case for age discrimination, a plaintiff must show that she met the requirements listed in the job description. *See Witt v. Franklin Cnty. Bd. of Educ.*, No. CV-11-S-1031-NW, 2013 WL 832152, at *22 (N.D. Ala. Feb. 28, 2013) (finding job description required "five years of teaching or supervisory experience in career-technical education" and employee was not "qualified" for position when employee had not taught career-technical education for five years); *see Kim v. Bd. of Trs. of the Ala. Agric. &*

8

*Mech. Univ.*, 2014 U.S. Dist. LEXIS 134321, 24 (N.D. Ala. Sept. 24, 2014) (finding employee not "qualified" for position because she failed to publish scholarly articles as required by University handbook).

Here, the qualifications for the ADOA position are in dispute. The October 18, 2011 version of the job description required a bachelor's degree, three-to-five years of relevant experience, and a number of soft skills. The June 7, 2012 version of the job description made the degree requirement optional *if* the candidate had sufficient prior experience. Edwards and Sanders applied in May 2012 and the parties dispute which version of the job description controls. However, Edwards possesses all the requirements in *either* version of the job description because she has a bachelor's degree and has worked in admissions since 2007.

Virginia College argues that serving as a successful Team Lead and completion of the Future Leaders Training Program are also prerequisites for serving as an ADOA. However, these "requirements" are not listed in either version of the job description. What matters, for purposes of her *prima facie* case, is that Edwards possessed the basic qualifications listed for the position.

### 2. Sanders as Comparator

Virginia College argues that Edwards fails to show the fourth element of her *prima facie* case, "that other equally or less-qualified employees outside her class were promoted." *Bryant*, 382 Fed. App'x at 917. Edwards proffers Sanders as her comparator because Virginia College promoted Sanders, an under 40-year-old Admissions Associate, and did not promote Edwards, an over 40-year-old Admissions Associate.

Virginia College argues that Sanders is not a valid comparator for Edwards and is *better* qualified than Edwards because he (1) had more experience as an Admissions Associate than

9

Edwards; (2) completed the Future Leaders Training Program; and (3) served longer and more successfully as a Team Lead. When the facts are viewed in the light most favorable to Edwards, however, Sanders is the appropriate comparator; the quality of the comparator's credentials goes to the sufficiency of the Defendant's legitimate, non-discriminatory reason for its decision, not whether Edwards established the prima facie case. *See Bryant*, 382 Fed. App'x at 918 (finding that the comparator's qualifications as "the most qualified candidate for the position" are legitimate and non-discriminatory reasons for the employment decision).

First, Edwards has worked as an admissions recruiter since 2007, longer than Sanders, who has worked as an admissions recruiter since 2008. Second, whether Sanders completed the Future Leaders Training Program or served as a Team Lead is not relevant because completion of these programs are not requirements for the ADOA position. Finally, depending on which job description the jury finds applies, Sanders may actually be *unqualified* for the position because he does not have a bachelor's degree, a requirement for the position.

Sanders is a valid comparator because he was under 40 and equally or less-qualified than Edwards when Virginia College promoted him. Thus, Edwards presents a genuine issue of material fact and establishes a *prima facie* case of age discrimination.

    **B.**    **Legitimate, Non-discriminatory Reasons**

Once a plaintiff establishes a *prima facie* case, the employer must provide a legitimate, non-discriminatory reason for its action. *See Clark*, 990 F.2d at 1227. "[The defendant's] burden of rebuttal is exceedingly light. . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Gray v. City of Jacksonville, Fla.*, 492 Fed. App'x 1, 7 (11th Cir. 2012).

Macon solely decided who to promote to the position. Virginia College proffers several reasons Macon chose Sanders and did not choose Edwards. First, Sanders completed the Future Leaders Training Program. Second, Sanders had substantial experience as an Admissions Associate. Third, Sanders worked for two years as a Team Lead. Fourth, Macon felt Sanders would be the best fit for working with and overseeing the Admissions Associates.

The first three reasons relate to Macon's belief that Sanders had better qualifications than Edwards. A candidate's inferior work experience compared to another candidate is a legitimate, non-discriminatory reason not to promote. *See Hernandez v. Wilsonart Int'l, Inc.*, 478 Fed. App'x 547, 548 (11th Cir. 2012). Virginia College's fourth reason for choosing Sanders is that Macon believed Sanders would be a better leader. A candidate's lack of leadership skills compared to another candidate is a legitimate, non-discriminatory reason not to promote. *See Garcia v. DS Waters of Am., Inc.*, 372 Fed. App'x 925, 927 (11th Cir. 2010). Thus, Virginia College has proffered legitimate, non-discriminatory reasons it chose Sanders.

C.     **Pretext**

Once the employer proffers a legitimate, nondiscriminatory reason, the plaintiff must show that (1) the proffered reason is pretext and (2) that the but-for reason for the employer's decision is the employee's age. *See Gross*, 557 U.S. at 176-77.

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. "Plaintiff may demonstrate that [an employer's] reasons were pretextual by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered

legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348-49 (11th Cir. 2007) (internal quotation marks and alterations omitted) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir.2004)).

Edwards contends that evidence exists "to support the conclusion that Virginia College denied Edwards the opportunity to the ADOA." (Doc. 34 at 14).  Edwards contends that she "possessed the experience and qualifications, yet, was overlooked for the ADOA position" and that "this evidence, alone, should be sufficient to raise a genuine issue of material fact as to whether Edwards was denied a promotion due to her age." Edwards argues that Virginia College's reasons for choosing Sanders over her for the ADOA position are pretext because Sanders is potentially *unqualified* for the job and, thus, cannot be more qualified than Edwards. To argue a qualification disparity, "a plaintiff must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer*, 509 F.3d at 1349 (quoting *Cooper*, 390 F.3d at 732.

Edwards' statement of facts highlights that Macon did not review 24 applications for the ADOA position.  (Doc. 34-1 at 8-10).  Importantly, Macon did not review Edwards' and at least two other additional "internal candidates'" applications submitted through an online program. Edwards, however, does not argue that Macon's failure to review her application or the applications of the other applicants were related age. Edwards presents no evidence that Macon's decision not to review certain applications was related the applicants' age in any way. Accordingly, Edwards failed to present sufficient evidence of pretext based on Macon's failure to

review all applications.

Taking the facts in the light most favorable to Edwards, a genuine issue of material fact exists whether the ADOA position requires a bachelor's degree. A jury could find that the June 7, 2012 version of the job description applies depending on the evidence presented at trial. Thus, a reasonable factfinder *could* find Virginia College's proffered reasons, that Sanders was better qualified and a better leader than Edwards, implausible because Sanders does not possess a bachelor's degree or meet the minimum qualifications for the position.

However, even if Edwards shows that Virginia College's reasons are false, she must also show that age discrimination is the "but-for" reason for the decision. "[A] reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Springer*, 509 F.3d at 1349 (quoting *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006)). "[T]he plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross*, 557 U.S. at 177. "[T]he ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id; see also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993) (noting that a "disparate treatment . . . captures the essence of what Congress sought to prohibit in the ADEA" and that "a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome").

Edwards's evidence having *any* connection with *anyone's* age is exceedingly scant. The record shows that in May 2012, Edwards was 41 years old, Sanders was not yet 40 years old, and Macon, the decisionmaker, was around 47 years old. The record also shows that employees in the

13

Admissions Department talked openly about their age and celebrated birthdays. For example, Christine Elscherman-Johnson, Virginia College's Vice-President of Admissions, once "sarcastically" said, in referring to Edwards and other Virginia College employees, "[t]hey have the old people sitting over here." (Doc. 34-1, 19). Those facts comprise the sum of the age-related evidence, taken in the light most favorable to Edwards, in this case.

Age discrimination is likely not the real reason for an employer's failure to promote an employee when the decisionmaker himself is over 40 and within the class protected by the ADEA. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) ("[The employee] faces a difficult burden here, because all of the primary players behind his termination . . . were well over age forty."). Here, Macon, the decisionmaker, was around 47 in 2012.

Further, age-related comments are not the real reason for discrimination when no causal link exists between the comments and the adverse employment action. *See Bradley v. Pfizer, Inc.*, 440 Fed. App'x 805, 808 (11th Cir. 2011); *see also Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987) (vice president's statement that the corporation was "going to weed out the old ones" did not preclude summary judgment where the vice president played no part in the decision to fire the plaintiff). No evidence exists that Macon knew about Elscherman-Johnson's age-related comment, approved of it, or that he considered it when promoting Sanders instead of Edwards. Elscherman-Johnson did *not make or participate* in the decision to promote Sanders over Edwards.

Edwards provides no other evidence that Macon did not promote her because of her age beyond her subjective belief. Edwards *believes* Virginia College did not promote her to ADOA because of her age, because Macon could not "intimidate" or "manipulate" her, because she "was

14

a mature woman," because she "was educated," and because she "wasn't going to be led by a string." (Doc. 32-1, 51-52). However, Edwards has no evidence, beyond her subjective belief, to substantiate these claims. Edwards's age cannot merely be a motivating factor behind Macon's decision -- she must produce evidence that it was the real reason. *See Gross*, 557 U.S. at 174. Edwards "believes" up to six different reasons may have motivated Macon. Age cannot be the but-for reason for Virginia College's actions because Edwards fails to offer any evidence that age had *any* relationship to Macon's decision to promote someone else.

### IV.    Conclusion

In summary, Edwards establishes a *prima facie* case that Virginia College failed to promote Edwards because of her age. Further, Edwards raises a genuine issue of material fact that Sanders may not be better qualified than Edwards, even though Virginia College proffers Sanders's superior experience and leadership skills as its reasons for choosing Sanders over Edwards. However, Edwards offers *no* evidence that Virginia College's real reason for not promoting Edwards was her age. *See Gross*, 557 U.S. at 174. Thus, Edwards's case cannot survive summary judgment.

Therefore, the court **GRANTS** Virginia College's summary judgment motion. (Doc. 30).

DONE and ORDERED this 15th day of September, 2015.

_Karon O. Bowdre_
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE